IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| TRUITT ENTERPRISES, LLC, et al. | * | |
| Plaintiffs, | * | Civil Action No.: |
| v. | * | **CCB 03-CV-527** |
| FORTIS, INC., et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS**

INTRODUCTION

Defendants American Bankers Insurance Group, Inc. ("ABIG"), American Security Insurance Company ("ASIC") and Fortis, Inc. ("Fortis") submit this memorandum of points and authorities in support of their motion to dismiss.

The complaint of Plaintiffs Truitt Enterprises, LLC ("Truitt Enterprises") and James F. Truitt, Jr., P.A. ("TPA") (collectively "Truitt") must be dismissed because the claims asserted therein are compulsory counterclaims that must be asserted, if at all, in an earlier-filed federal action pending in the District of New Jersey (the "New Jersey Action").[1] Indeed, Plaintiffs' later commenced effort—the instant action—is but the mirror opposite of the earlier-commenced New Jersey Action. Both actions involve Truitt Enterprises' breach of a December 14, 2000 Letter Agreement (the "Letter Agreement").[2] They involve the same issues of fact and law, the same

---

[1] A copy of the Complaint in the New Jersey Action (the "New Jersey Complaint") is attached hereto as *Exhibit A*.

[2] The Letter Agreement is attached as an exhibit to the respective complaints both in this action and in the earlier-filed New Jersey Action.

evidence and the same parties-in-interest. For these reasons, this Court should dismiss the instant action and reject Truitt's transparent effort to forum shop.

In addition, Fortis should be dismissed for an independent reason: it was not a party to the Letter Agreement. Further, TPA's third-party beneficiary claim must be dismissed because TPA was not identified in the Letter Agreement and was not a primary and direct beneficiary of that agreement.

## FACTUAL BACKGROUND

On December 14, 2000, Truitt Enterprises entered into the Letter Agreement with American Bankers Insurance Group, Inc., American Security Insurance Company, Standard Guaranty Insurance Company and Union Security Life Insurance Company (collectively, "American Bankers").[3] Under the Letter Agreement, Truitt Enterprises agreed to acquire and "service" a portfolio of tax liens for the benefit of certain subsidiaries of defendant ABIG. (Those subsidiaries are the plaintiffs in the first-filed New Jersey Action). Plaintiffs in the New Jersey Action contend that Truitt Enterprises breached the Letter Agreement by acquiring numerous tax liens that failed to satisfy the minimum requirements set by the contract, and that Truitt Enterprises breached its fiduciary and contractual duties under a side letter agreement by sabotaging negotiations with potential buyers of American Bankers' tax lien portfolio.

## PROCEDURAL BACKGROUND

As a result of Truitt's material breaches, on February 18, 2003, American Bankers terminated the Letter Agreement pursuant to its terms and sued Truitt Enterprises in the United States District Court for the District of New Jersey. Truitt Enterprises is the sole defendant in the New Jersey Action; the subsidiaries of ABIG that actually purchased the tax liens, American

---

[3] Of those, plaintiffs have only named ABIG and ASIC as defendants in this action.

Bankers Insurance Company of Florida, American Bankers Life Assurance Company of Florida, American Reliable Insurance Company and Federal Warranty Service Corporation (collectively, the "New Jersey Plaintiffs"), are the plaintiffs.

Two days later, on February 20, 2003, Truitt Enterprises and TPA commenced this action.[4] As mentioned above, the two actions are mirror opposites. In the prior-filed New Jersey Action, the American Bankers plaintiffs assert that Truitt Enterprises materially breached the Letter Agreement; while in the instant, later-filed suit, Truitt Enterprises seeks a declaration that it did not commit that breach, and that American Bankers, by terminating the Letter Agreement, committed its own breach.[5]

## ARGUMENT

I.  The Complaint Must Be Dismissed Because the Claims Asserted are Compulsory Counterclaims in the New Jersey Action and Cannot Be Brought as Separate Claims in this Later-Filed Action.

The Complaint in this action must be dismissed because all of the claims are compulsory counterclaims in the New Jersey Action. Fed.R.Civ.P. 13(a) provides, in pertinent part, that:

> (a) **Compulsory Counterclaims**. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. … But the pleader need not state the claim if … at the time the action was commenced the claim was the subject of another pending action.

By the plain language of this rule, counterclaims arising from the same transaction or occurrence as the plaintiff's claims in a first-filed action must be brought in *that* first action or they are

---

[4] This action, which was originally commenced in the Circuit Court for Baltimore County, Maryland, was removed to this Court on February 26, 2003

[5] TPA also has brought a derivative third-party beneficiary claim.

3

deemed waived.  The only exception – inapplicable here – concerns counterclaims that are *already* subject to another pending action.

There can be no question that the New Jersey Action predates this action.  Thus, if the claims in the instant action are compulsory counterclaims in the New Jersey Action, i.e., if they arise from the same transaction or occurrence, they must be dismissed in Maryland and asserted in New Jersey.  See Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred."); SSMC, Inc. v. Steffen, 102 F.3d 704, 712 (4th Cir. 1996) (noting the Advisory Committee Notes to Rule 13(a) that bar a claim in a separate suit that should have been brought as a compulsory counterclaim in an earlier suit); Mellon Bank, N.A. v. Ternisky, 999 F.2d 791, 795 (4th Cir. 1993) (noting that the failure to file a compulsory counterclaim in one action bars pursuit of that claim in a later action);  Brown v. Kelly, 823 F.2d 546, 1987 WL 36140, at * 2 (4th Cir. 1987) (affirming dismissal of two claims deemed compulsory counterclaims to a previously-filed complaint); Mesker Bros. Iron Co. v. Donata Corp., 401 F.2d 275, 278-79 (4th Cir. 1968) ("Although the rule does not explicitly so state, the effect of a defendant's failure to assert a counterclaim made compulsory by section (a) is to preclude its assertion in a later action against the former plaintiff."); J. Aron & Co. v. Service Trans. Co., 515 F. Supp. 428, 448 (D. Md. 1981) (noting that "the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently").

The Supreme Court has explained the rationale for barring separately-filed compulsory counterclaims:

> [Rule 13(a)] was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.  The Rule was particularly directed against one who failed to assert a counterclaim in one action and then

>instituted a second action in which that counterclaim became the basis of the complaint.

Southern Constr. Co. v. Pickard, 371 U.S. 57, 60 (1962). The Fourth Circuit has echoed the Pickard sentiment, stating that the "very purpose of making certain types of counterclaims compulsory is to prevent the relitigation of the same set of facts." Painter v. Harvey, 863 F.2d 329, 332 (4th Cir. 1988) (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure, at § 1410). "Holding counterclaims compulsory avoids the burden of multiple trials with their corresponding duplication of evidence and their drain on limited judicial resources." Painter, 863 F.2d at 332; see also J. Aron & Co., 515 F. Supp. at 448 (noting that considerations of fairness, convenience, and efficiency are inherent in the compulsory counterclaim rule). In addition, because "a compulsory counterclaim relates back to the time of the filing of the plaintiff's complaint," Kirkpatrick v. Lenior County Bd. of Educ., 216 F.3d 380, 388 (4th Cir. 2000), it would essentially pre-date a later-filed action that asserts the same claim.

>A.  The New Jersey District Court Would Find That the Claims in This Action are Compulsory Counterclaims in the New Jersey Action.

It is beyond dispute that Truitt's claims in this case are, in fact, compulsory counterclaims in the New Jersey Action. Under Third Circuit authority (which applies to the New Jersey Action), for a counterclaim to be a considered compulsory, "there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a *logical relationship* to an opposing party's claim.'" Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002) (emphasis added) (quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)); see also Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., LLC, 64 F. Supp. 2d 398, 405-06 (D.N.J. 1999).

5

The Third Circuit in Transamerica explained the concept of "logical relationship" as follows:

> The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts. Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties.

Transamerica, 292 F.3d at 389-90 (internal quotes and citations omitted) (affirming dismissal of New Jersey suit in favor of earlier-filed suit in Texas); see also Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961); Waterloov, 64 F. Supp. 2d at 406; Jack LaLanne Fitness Ctrs., Inc v. Jimlar, Inc., 884 F. Supp. 162, 163 (D.N.J. 1995).[6] "[T]wo claims involve the same cause of action," under this *logical relationship* test, "if there is an essential similarity of the underlying events giving rise to the various legal claims." Corestates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 200 (3d Cir. 1999) (internal quotes omitted).

The *logical relationship* between the claims in this action and those in the New Jersey Action is self evident. Both require, as the threshold issue, a determination of whether Truitt Enterprises breached the Letter Agreement. In the New Jersey Action, American Bankers asserts that Truitt breached the Letter Agreement, justifying termination. Here, in this later-filed action, Truitt Enterprises seeks a declaration that it did not breach the agreement and challenges American Bankers' termination of the agreement. The *logical relationship* of these inextricable claims is undeniable. See Transamerica, 292 F.3d at 393 (finding that a declaratory judgment action in New Jersey involved the same factual and legal issues as a breach of contract action in Texas).

---

[6] The standard for determining whether a counterclaim is compulsory is ostensibly the same under Fourth Circuit law. See, e.g., Painter, 863 F.2d at 331; Brown, 823 F.2d 546, 1987 WL 36140, at *2.

6

Because of their *logical relationship* to the claims in the New Jersey Action, Truitt Enterprises' claims (and, derivatively, TPA's third-party claim) in this later-filed action must be brought as compulsory counterclaims in New Jersey, or they are barred. This Court should dismiss the claims and allow the New Jersey Action to proceed in due course.

B. <u>The Inclusion of TPA's Third-Party Beneficiary Claim and the Naming of Fortis as a Defendant Does Not Alter the Compulsory Counterclaim Analysis</u>.

The compulsory counterclaim analysis – which requires dismissal of the complaint in this action – is not affected by the fact that Fortis and TPA are named parties in this action and not the New Jersey Action. As noted by the Third Circuit in <u>Transamerica</u>, so long as the claims arise out of the same contracts and the parties are "functionally equivalent," the difference in party designations will not diminish the compulsory nature of claims that are otherwise logically related. <u>See</u> <u>Transamerica</u>, 292 F.2d at 390-93. In that case, the Third Circuit held that the term "opposing party" in Rule 13(a) enjoys the same liberal reading as that given to "transaction or occurrence," and, notwithstanding the "potential harshness" of the rule, it "should include parties in privity with the formally named opposing parties." <u>Id.</u> at 390-93.

Central to both lawsuits is a determination of whether Truitt Enterprises breached the Letter Agreement and whether American Bankers was justified in terminating the agreement. The claims against Fortis and by TPA are wholly derivative of this principal issue. In fact, the only allegations against Fortis are that it acted as an agent on behalf of ABIG and its subsidiaries.[7] (Md. Complaint at ¶¶ 18, 22, 24, 26, 36.). TPA, for its part, styles itself as a

---

[7] It is black letter law that an agent is not liable for the contractual obligations of its disclosed principal. <u>See</u> <u>Hill v. County Concrete Co.</u>, 672 A.2d 667, 670-71 (Md. App. 1996). For that reason, too, as set forth in Section II, *infra*, this Court should dismiss Fortis as a defendant.

7

supposed third-party beneficiary of the Letter Agreement.[8]  Neither of these derivative claims has vitality independent of the core contractual dispute between American Bankers and Truitt Enterprises.  Which is to say, Fortis cannot be liable as American Bankers' agent and TPA cannot collect as a third-party beneficiary if American Bankers' termination of the Letter Agreement was justified.  A fair reading of Rule 13(a) bars these ancillary claims except as compulsory counterclaims in the first-filed New Jersey action.

Based on the above principles, the mere fact that Fortis and TPA are parties in this action but not in the New Jersey Action does not shield Truitt Enterprises and TPA from the compulsory counterclaim rule.[9]

II.     The Claims Against Fortis Must Be Dismissed Because Fortis Was Not a Party to the Letter Agreement.

Truitt has no contractual remedy against Fortis because Fortis was not a party to the Letter Agreement.  It is axiomatic that "there must be a contract between the parties for there to be a breach."  Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 482 (D. Md. 2002); see also Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F. Supp. 312, 322 (D. Md. 1983).  "Only parties to a contract can enforce that contract and they may only enforce it against parties to the contract."  Carson, 187 F. Supp. 2d at 482 (citing Toshiba, 576 F. Supp. at 322).  Because

---

[8] For reference, TPA stands for "James F. Truitt, Jr., P.A.," which is Mr. Truitt's law firm.  Because TPA is not even referenced in the Letter Agreement, TPA's third-party beneficiary claim must be dismissed.  (See Section III, infra.)

[9] Rule 13(h) – in conjunction with the other joinder rules – addresses the procedure for adding additional parties to a counterclaim, which ostensibly could happen in the New Jersey Action.  It states:

> **(h) Joinder of Additional Parties**.  Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20.

Rules 19 and 20 allow for the joinder of either a plaintiff or defendant if that party's presence is necessary for a full and just adjudication of the claims (Rule 19) or if that party has a right to relief "arising out of the same transaction, occurrence … and if any questions of law or fact common to all … will arise in the action" (Rule 20).  The addition of parties to a compulsory counterclaim, in accordance with Rule 13(h), has been recognized by the courts.  See, e.g., Transamerica, 292 F.3d at 393; Waterloov, 64 F. Supp. 2d at 407.

Truitt cannot even allege that Fortis was a party to the Letter Agreement, Fortis must be dismissed as a defendant.

The parties to the Letter Agreement are unambiguously set forth in the opening paragraph and the signature block of the agreement. Fortis is not even referenced in the agreement, let alone identified as a party. Indeed, the Maryland Complaint acknowledges that Fortis was not involved in the parties' relationship until 2001, well after the Letter Agreement was executed. (Md. Complaint at ¶ 18). Again, the only allegations against Fortis are that it acted as an agent on behalf of ABIG and its subsidiaries, (Md. Complaint at ¶¶ 18, 22, 24, 26, 36), and an agent is not liable on the contracts of its principal. See Hill, 672 A.2d at 670-71. These allegations are insufficient to support a contract claim against Fortis; therefore, Fortis should be dismissed as a defendant in this action.

III.  **The Third-Party Beneficiary Claim Must Be Dismissed Because TPA Was Not Intended To Be a Primary and Direct Beneficiary of the Letter Agreement**.

TPA asserts that it was a third-party beneficiary under the Letter Agreement and, therefore, is entitled to recover damages for American Bankers' alleged breach. This claim is without merit.

Under Maryland law, a third-party beneficiary may recover for breach of contract only if it clearly appears "that the parties [to the contract] intended to recognize him as the primary party in interest and as privy to the promise." Century Nat'l Bank v. Makkar, 751 A.2d 1, 6 (Md. App. Ct. 2000) (quoting Marlboro Shirt Co. v. Am. Dist. Tel. Co., 196 Md. 565, 569 (1951)); see also Parlette v. Parlette, 596 A.2d 665, 671 (Md. Ct. App. 1991); Gray & Son, Inc. v. Maryland Deposit Ins. Fund Corp., 575 A.2d 1272, 1276 (Md. App. Ct. 1990). "In order to recover it is essential that the *beneficiary shall be the real promisee*; *i.e.*, that the promise shall be made to

him in fact, though not in form. It is not enough that the contract may operate to his benefit." Gray & Son, 575 A.2d at 1276 (emphasis in original); see also Merrick v. Mercantile-Safe Deposit & Trust Co., 855 F.2d 1095, 1100 (4th Cir. 1988) (holding that the parties to the contract must have "actually intended to benefit" the third party and that the benefit must be "a direct purpose of the transaction or relationship.") This determination must be made based on "the intention of the contract, revealed by its terms, in light of the surrounding circumstances." In re Merry-Go-Round Enterprises, Inc., 218 B.R. 361, 366 (D. Md. 1998) (quoting Hamilton & Spiegel, Inc. v. Bd. of Educ., 233 Md. 196, 199 (1963)).

The mere reference in a contract to a third-party service provider is not sufficient to make that third party an intended beneficiary. See Lumpkins v. U.S., 212 F. Supp. 2d 464, 469 (D. Md. 2002) (dismissing third-party beneficiary claim because the mere designation of a quality manager to inspect the parties' work did not confer a "direct benefit" on the quality manager). "An incidental beneficiary acquires by virtue of the promise [in the agreement] no right against the promisor or the promisee." Makkar, 751 A.2d at 6 (quoting Marlboro Shirt Co., 196 Md. at 569). In addition, in an agreement providing that a third party "may" perform work required by the contract is too ambiguous to support a finding that the parties intended to benefit the third party directly. See Merry-Go-Round, 218 B.R. at 367.

TPA alleges that American Bankers "authorized" Truitt Enterprises "to provide for the retention of counsel for all legal actions affecting the [tax lien certificates] in the portfolio … [and] specifically acknowledged that [TPA] *would* be retained as Maryland counsel." (Md. Complaint at ¶ 14 (emphasis added).) Based on that language, TPA wrongly concludes that it "was therefore an intended third-party beneficiary" of the Letter Agreement. (Id.) The argument fails for two reasons.

First, TPA twice mischaracterizes the Letter Agreement. The Letter Agreement does *not* state that TPA "would be retained as counsel" – it makes no reference to TPA whatsoever, and merely identifies Mr. Truitt as the president of Truitt Enterprises.[10] Because it is not even referenced in the agreement, TPA cannot possibly be an intended third-party beneficiary. See Merry-Go-Round, 218 B.R. at 366 (noting that the name of the intended third-party beneficiary "is normally listed in the contract"). Furthermore, Section 3(b)(vi) of the Letter Agreement states that Mr. Truitt "may" (*not* "would") be retained as counsel to service the tax liens. "May" is the very type of ambiguous, conditional language that led to the dismissal of the third-party beneficiary claim in Merry-Go-Round. 218 B.R. at 367.

Second, a plain reading of the Letter Agreement reveals that neither Mr. Truitt nor his law firm (TPA) were intended to be "the primary party in interest" to the Letter Agreement or "privy to the promise" made in the agreement. See Makkar, 751 A.2d at 6. The "real promisees" were the parties to the Letter Agreement, Gray & Son, 575 A.2d at 1276, and no reasonable person could find that "a direct purpose of the transaction or relationship" was to provide Mr. Truitt (or his law firm) with legal work stemming from the tax lien transactions. Merrick, 855 F.2d at 1100. As such, neither Mr. Truitt nor his law firm, TPA, could maintain a third-party beneficiary claim under the Letter Agreement.

---

[10] Not coincidentally, James F. Truitt, Jr. also signed the Letter Agreement on behalf of Truitt.

11

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint in its entirety, and grant such other further relief as is deemed appropriate.

Respectfully submitted,

_____/s/_____
Kathryn Miller Goldman
Jiranek, Goldman & Minton, P.C.
19 E. Fayette Street, Suite 401
Baltimore, Maryland 21202
(410) 783-1300
*kgoldman@jgmlegal.com*

SULLIVAN & WORCESTER LLP
Michael T. Sullivan
Andrew T. Solomon
565 Fifth Avenue, 18th Floor
New York, New York  10017
(212) 486-8200
(646) 865-1494

Attorneys for Fortis, Inc, American Bankers Insurance Company, Inc., and American Security Insurance Company