**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                                          :
TRUITT ENTERPRISES, LLC, et al.,                          :
                                                                                          :
             Plaintiffs,                                          :
                                                                                          :
     v.                                                            :    Civil Action No. 1:03-cv-00527-CCB
                                                                                          :
FORTIS, INC., et al.,                                                 :
                                                                                          :
             Defendants.                                       :
                                                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS**

       Defendants American Bankers Insurance Group, Inc. ("ABIG"), American Security

Insurance Company ("ASIC") and Fortis, Inc. ("Fortis") submit this reply brief in further support

of their motion to dismiss.

<u>INTRODUCTION</u>

       Plaintiffs Truitt Enterprises, LLC ("TE") and James F. Truitt, Jr., P.A. ("TPA")

(collectively "Truitt") concede that the District Court for the District of New Jersey, as "the court

first acquiring jurisdiction," is charged with the responsibility of determining the appropriate

venue for this dispute.  (Pls' Opp. at 14.)  Indeed, Plaintiffs suggest that this Court hold the

pending motion to dismiss "in abeyance until Judge Hayden rules on [Truitt's] motion in New

Jersey."  (Pls' Opp. at 14.)  Defendants concur.  In the event, however, that the Court decides to

consider Defendants' motion to dismiss now, rather than after the New Jersey court decides TE's

pending motion, Defendants hereby respond to Plaintiffs.

ARGUMENT

I.    Plaintiffs' Venue Arguments Have No Bearing On The "Compulsory Counterclaim"
      Analysis Required Under Fed. R. Civ. P. 13(a).

      Plaintiffs concede, as they must, that the New Jersey Court should decide the appropriate

venue for this dispute.  (Pls' Opp. at 14.)  It is well-established that the court first acquiring

jurisdiction decides such issues.  See Affinity Memory & Micro, Inc. v. K & Q Enters., Inc., 20

F. Supp. 2d 948, 954 (E.D. Va. 1998) (court in which action was filed first is the "appropriate

forum to decide the venue and transfer issues"); Ontel Prods., Inc. v. Project Strategies Corp.,

899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("the court in which the first-filed case was

brought decides the question of whether or not the first-filed rule, or alternatively, the exception

to the first-file rule, applies"); Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County, 542 F.

Supp. 1317, 1321 (S.D.N.Y. 1982) (the "district court hearing the first-filed action should

determine whether . . . the first action be dismissed in favor of the later-filed action").  Absent

such a rule, a risk exists of "inconsistent rulings on discretionary matters as well as duplication

of judicial effort."  Donaldson, 542 F. Supp. at 1321.

      Having conceded this issue and having agreed to voluntarily discontinue this action if

their motion to dismiss or transfer the New Jersey action is unsuccessful (see Pls' Opp. at 14),

Plaintiff's ten pages of analysis regarding the appropriate forum is superfluous (see id. at 14-23).

Defendants will not similarly burden the Court.

      To the extent, however, that the Court might consider Plaintiffs' venue analysis,

Defendants respectfully refer to their opposition memorandum filed in the New Jersey action,

addressing the same issues.  (The New Jersey Opposition of American Bankers, et al. is attached

hereto as Exhibit A.)  A summary of Defendants' argument is as follows:

      •      Venue is proper in New Jersey because TE's breach of contract relates to
             the sale of property located in New Jersey (Ex. A at 8-11) and a

2

substantial part of the events underlying the dispute occurred in New Jersey (id. at 11-13).

•     Transfer of venue out of New Jersey is not appropriate because: (1) New Jersey is the "home forum" of the plaintiffs in that action (including Defendants in this action, ABIG and ASIC) (id. at 14); (2) many of the events and much of the property underlying this dispute are situated in New Jersey (id. at 14-15); (3) convenience of documents and witnesses does not favor proceeding in Maryland (id. at 15-16).

•     TE's argument regarding the "equity exception" to the first-filed rule is entirely baseless. After receiving TE's "Notice of Breach," ABIG was not obligated to await a lawsuit from TE, but was squarely within its right to strike first. Once TE formally declared ABIG "in breach," the prospect of litigation was certainly in play and filing the New Jersey lawsuit was prudent, not inequitable.

Defendants submit that the above compels the conclusion that New Jersey is the appropriate venue.

II.    <u>Plaintiffs Fail To Allege Sufficient Facts To Show That Fortis Adopted The Letter Agreement</u>.

The contract claims that Plaintiffs advance against Fortis must be dismissed for a simple, undeniable reason: Fortis was not a party to the contract. Plaintiffs, unable to dispute this fact, argue for the first time that Fortis, in its capacity as agent for the American Bankers entities, somehow "adopted" the Letter Agreement as its own. This new argument, absent from the Complaint, is makeweight and should be rejected by this Court.

In the Complaint, Plaintiffs allege that "at some point during the year 2001, Fortis began to exercise direct responsibility for monitoring the TLC investment portfolio managed and serviced by TE *on behalf of* Fortis' subsidiaries the Assurant Group." (Compl. ¶ 18.) This is plainly the language of an agency relationship. Naturally, as the managing agent for the American Bankers entities, Fortis acted on their behalf, even signing contracts for them, including the letter agreement attached as Exhibit B to the Complaint. Having rightly characterized Fortis as an agent, Plaintiffs cannot pursue their claims against Fortis as principal.

3

Indeed, it is black letter law that an agent acting on behalf of a disclosed principal is not liable on the contracts of the principal. <u>Hill v. County Concrete Co.</u>, 672 A.2d 667, 670-71 (Md. App. 1996); <u>Curtis G. Testerman Co. v. Buck</u>, 667 A.2d 649, 653 (Md. 1995). Plaintiffs do not contest this well-established rule. Furthermore, to protect agents from contract claims, Maryland law demands <u>clear evidence</u> that an agent sought to be bound personally by his conduct. <u>See</u> <u>Curtis G. Testerman</u>, 667 A.2d at 653 (noting the "nearly universal practice" that a corporate officer intending to be bound personally signs a contract twice—"once as an officer and again as an individual"). In an analogous context, posing a similar risk of liability for independent acts, Maryland law requires proof that a non-signatory "unequivocally intended to be bound by a contract to which it was not a party." <u>Residential Warranty Corp. v. Bancroft Homes</u> <u>Greenspring Valley, Inc.</u>, 728 A.2d 783, 794 (Md. App. 1999), <u>cert. denied</u>, 735 A.2d 1107 (1999). The requisite "unequivocal proof" did not exist in <u>Residential Warranty Corp.</u> because the alleged conduct which purportedly evidenced "adoption" of the contract was also mandated by statutory duties imposed on the non-signatory. <u>See id.</u> at 793-94. Here, Plaintiffs have not alleged facts, even if proven, that could possibly meet the "unequivocal proof" test.[1]

The allegations made by Plaintiffs regarding Fortis' conduct, rather than revealing Fortis as a "principal," merely confirm Fortis' status as an agent charged with "monitoring the TLC investment portfolio managed and serviced by TE." (Pls' Opp. at 24; Compl. ¶ 18.) In the same vein, Plaintiffs' allegations such as: (1) "Fortis unilaterally announced that it would not authorize TE to purchase any new TLCs" (Pls' Opp. at 25; Compl. ¶ 18); and (2) Fortis engaged in "a series of meetings and negotiations" regarding early termination of the contract (Pls' Opp. at 25;

---

[1] Plaintiffs also make a half-hearted argument that "Fortis <u>may</u> have acquired the liabilities of its subsidiary Entities." (Pls' Opp. at 26, emphasis supplied). This theory is wholly unsupported by the allegations in the Complaint. The entire argument is littered with speculation, and merits no further response.

Compl. ¶ 19) fail to manifest an intent by Fortis to adopt the Letter Agreement.[2]  Because Fortis

cannot be bound personally for actions taken as an agent, there can be no breach of contract

claim against Fortis.

Plaintiffs' reliance on the distinguishable cases of <u>Porter v. General Boiler Casing Co.</u>,

396 A.2d 1090 (Md. 1979) and <u>Snider Bros., Inc. v. Heft</u>, 317 A.2d 848 (Md. 1974) is

misplaced.  Neither case involves an attempt to personally bind an agent; and both are

specifically distinguished by the <u>Residential Warranty</u> case, applicable here, due to the

probability that defendant was acting independent of the contract at issue.  <u>See</u> 728 A.2d at 794.

As a result, the court found that defendant "never expressly adopted or engaged in conduct

manifesting acceptance of the agreement" in the absence of evidence that it "unequivocally

intended to be bound."  <u>Id.</u>  The same is true here.  Unlike in the cases Plaintiffs cite, Fortis was

operating as an agent for a disclosed principal, not on its own behalf, under the contract.  With

no allegations presenting an "unequivocal" intent to be bound, the Court should dismiss Fortis as

a party.

III.    <u>Plaintiffs Have Made No Showing That TPA Was Intended To Be A Primary And Direct
        Beneficiary Of The Letter Agreement</u>.

In its opening brief, Fortis argues that, just like all the other law firms and vendors hired

to help service the American Bankers' portfolio, Mr. Truitt's law firm was <u>not</u> a third-party

---

[2] Plaintiffs also offer statements from the Second Declaration of James F. Truitt, Jr., in support of their contention that Fortis adopted the contract.  (<u>See</u> Pls' Opp. at 24-25.)  Plaintiffs obviously cannot rescue their deficient allegations by sworn statements on a motion to dismiss, which tests the sufficiency of the pleadings.  <u>See</u> <u>Davidson, D.D.S. v. Becker, D.D.S.</u>, Civ. A. AW-02-4209, 2003 WL 1869608, at * 1 (D. Md. Mar. 27, 2003) (a motion to dismiss "test[s] the legal sufficiency of the complaint, and not the facts that support it");  <u>Md. Minority Contractor's Ass'n v. Md. Stadium Auth.</u>, 70 F. Supp. 2d 580, 591 (D. Md. 1998) (a motion to dismiss for failure to state a claim "tests the sufficiency of the complaint . . . it does not resolve contests surrounding the facts").  The Court should therefore disregard the statements of the Truitt Declaration.  In any event, those statements are, like the allegations of the Complaint, easily explained by Fortis' conceded status as an agent and are insufficient to avoid dismissal.

beneficiary of the Letter Agreement.  Plaintiffs' third-party beneficiary claim should, therefore, be dismissed.  TPA fails to rebut this argument.

Plaintiffs seek to avoid dismissal through the bare assertion that "Count 3 of the Complaint quite literally states a claim that [TPA] is a third-party beneficiary under the December 2000 Agreement."  (Pls' Opp. at 27.)  Well established, however, is the rule that mere recitation "of a few conclusory legal terms does not insulate a complaint from dismissal." Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001).

Plaintiffs also accuse Fortis of "misreading" the plain language of the Letter Agreement, which specifically mentions that James F. Truitt *may* be retained as an attorney.  (Pls' Opp. at 27.)  The contractual agreement's permissive language, however, evinces no intent to "recognize [TPA] as the *primary party in interest and as privy to the promise*," which is required to prove a third-party beneficiary claim under Maryland law.  Century Nat'l Bank v. Makkar, 751 A.2d 1, 6 (Md. App. 2000) (emphasis added) (quoting Marlboro Shirt Co. v. Am. Dist. Tel. Co., 196 Md. 565, 569 (1951)); see also Parlette v. Parlette, 596 A.2d 665, 671 (Md. App. 1991); Gray & Son, Inc. v. Maryland Deposit Ins. Fund Corp., 575 A.2d 1272, 1276 (Md. App. 1990) ("it is essential that that the *beneficiary shall be the real promisee* . . . it is not enough that the contract may operate to his benefit") (emphasis in original).

The Court may determine as a matter of law, from a plain reading of the Letter Agreement, that TPA is neither the "primary party in interest" nor the "real promisee" of that agreement.  See Chicago Title Ins. Co. v. Lumberman's Mut. Casualty Co., 707 A.2d 913, 917 (Md. Ct. Spec. App. 1998) ("interpretation of unambiguous contract terms presents a question of law for the court to resolve").[3]  Courts applying Maryland law have dismissed third-party

---

[3] Plaintiffs misinterpret the argument in Defendants' opening brief as asserting that the agreement is ambiguous as a matter of contract interpretation.  While the brief does characterize the use of the word "may" as

beneficiary claims on the basis of plain contract language and insufficient pleading.  See The Binswager Cos. v. Merry-Go-Round Enters., Inc., 218 B.R. 361, 367 (D. Md. 1998); Century Nat'l, 751 A.2d at 6; see also Gray & Son, 575 A.2d at 1276 (rejecting a third-party beneficiary claim because "[t]he plain language of the letter of credit" showed that plaintiff was not the "primary party in interest").  This Court should do the same here because the Letter Agreement makes plain that TPA is not the "primary party in interest."

Plaintiffs assert that it is "difficult to imagine how the parties could have more explicitly set forth their intent to make Mr. Truitt's law firm a beneficiary" of the Letter Agreement.  (Pls' Opp. at 28.)  Notwithstanding Plaintiffs' inflated rhetoric, the Letter Agreement does not go nearly as far as the law requires.  Had the parties intended to designate TPA as the "primary" and "direct" beneficiary of the Letter Agreement, they would have (1) included TPA as a party to the Letter Agreement; (2) specifically identified TPA in the agreement, as opposed to merely referencing Mr. Truitt as the president of Truitt Enterprises; and/or (3) stated that TPA "will" or "shall," not merely "may," handle the transactions.  The noncommittal, permissive nature of the reference to Mr. Truitt in this Agreement is insufficient to sustain a third-party beneficiary claim.[4]  Truitt is simply one of any number of attorneys that may be retained by TE under the Letter Agreement.  Indeed, the Agreement makes clear that the relevant properties may be located in Maryland, New Jersey, the District of Columbia, Arizona, Illinois, Indiana, or any other state with approval from the Assurant Group, making it necessary as a practical matter to

---

"ambiguous" (Defs' Opening Mem. at 11), by this Defendants simply mean that the Letter Agreement does not require the use of TPA or any particular attorney.  While "ambiguous" may be an unfortunate choice of words, Defendants want to make clear that the argument for dismissing TPA's third-party claim rests upon a plain reading of the Letter Agreement and may therefore be resolved as a matter of law.

[4] One obvious explanation for this language is that Mr. Truitt, as both a principal of TE and a named partner of TPA, was rightly concerned about the conflict-of-interest presented by agreeing to engage in "oversight and review" of himself.  (Compl. Ex. A ¶ 3(b)(vi).)  Attorney Truitt, therefore, inserted the acknowledgement in an attempt to insulate himself from this charge.  Whether this language is, indeed, an effective "waiver" and whether Mr. Truitt met his attorney fiduciary duties are issues that Defendants are currently investigating.

use multiple law firms.  (<u>See</u> Compl. Ex. A ¶ 2(a).)  And the agreement specifically states that it shall "inure to the benefit of the parties hereto," language that the court in <u>Merry-Go-Round</u> found antithetical to a third-party beneficiary claim.  <u>See</u> 218 B.R. at 367.

Plaintiffs rely upon four cases that either support Defendants' argument or are readily distinguishable.  (<u>See</u> Pls' Opp. at 28-29.)  Plaintiffs' cite to <u>Geo. Byers Sons, Inc. v. East Europe Imp. Exp., Inc.</u>, actually supports Defendants' motion to dismiss.  In that case, the court rejected a third-party claim because it did not "clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise." 488 F. Supp. 574, 584 (D. Md. 1980).  Two of the cases cited by Plaintiffs are professional malpractice cases that explore the third-party beneficiary relationships at issue in a *negligence* context.  <u>See</u> <u>Flaherty v. Weinberg</u>, 492 A.2d 618, 624-27 (Md. 1985) (attorney malpractice claim); <u>see also</u> <u>Shofer v. Stuart Hack Co.</u>, 723 A.2d 481, 486-87 (Md. App. 1999) (assessing negligence claim for professional malpractice).  These cases import the third-party beneficiary concept into the unique context of professional malpractice in order to evaluate the scope of the professional duty of care; they have no bearing on the pure contract issues in this case.  In any event, even in the professional malpractice context, the courts recognize that "the third party beneficiary exception has a rather narrow scope."  <u>Flaherty</u>, 492 A.2d at 625-26.

The last case cited by Plaintiffs involves an issue concerning a "creditor beneficiary" claim that the court explicitly leaves unresolved.  <u>See</u> <u>College of Notre Dame of Md., Inc. v. Morabito Consultants, Inc.</u>, 752 A.2d 265, 276-77 (Md. App. 2000).  A "creditor beneficiary" claim, as opposed to Plaintiffs' alleged third-party beneficiary claim, exists "when performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary."  <u>Id.</u> at 276.  There is no allegation (and there could be none) that the American

Bankers entities owed any duty to TPA when they signed the Letter Agreement permitting use of TPA as counsel.  As such, the College of Notre Dame case, which resolves no legal issues in any event, is wholly inapposite.

Plaintiffs' misplaced reliance on these cases, and Plaintiffs' complete failure to distinguish the authority provided by Defendants, confirms that TPA's third-party beneficiary claim is defective.  The Letter Agreement makes clear on its face that TPA is neither the "primary party in interest" nor the "real promisee" of the agreement.  The Court should therefore dismiss TPA's third-party beneficiary claim.

<u>CONCLUSION</u>

For the reasons stated above, the Court should dismiss the Complaint in its entirety, and grant such other further relief as is deemed appropriate

Respectfully submitted,

_____/s/_____
Kathryn Miller Goldman
Jiranek, Goldman & Minton, P.C.
19 E. Fayette Street, Suite 401
Baltimore, Maryland 21202
(410) 783-1300
*kgoldman@jgmlegal.com*


SULLIVAN & WORCESTER LLP
Michael T. Sullivan
Andrew T. Solomon
565 Fifth Avenue, 18th Floor
New York, New York  10017
(212) 486-8200
(646) 865-1494


Attorneys for Fortis, Inc, American Bankers
Insurance Group, Inc., and American Security
Insurance Company