Carl D. Poplar (CP 4791)
POPLAR & EASTLACK
A Professional Corporation
215 Fries Mill Road
Turnersville, NJ 08012
(856) 227-5575

Michael T. Sullivan (MS 3158)
Andrew T. Solomon (AS 9200)
SULLIVAN & WORCESTER LLP
565 Fifth Avenue, 18th Floor
New York, NY 10017
(212) 486-8200

To Be Argued:
April 14, 2003

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA, AMERICAN RELIABLE INSURANCE COMPANY, AND FEDERAL WARRANTY SERVICE CORPORATION, | : : : : : : : | Civil Action No. 03-707(KSH) <br><br> Hon. Katharine S. Hayden <br><br> <u>Civil Action</u> |
| Plaintiffs, | : |  |
| -against- | : |  |
| TRUITT ENTERPRISES, LLC, | : |  |
| Defendant. |  |  |

PLAINTIFFS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS and/or TRANSFER

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ I

TABLE OF AUTHORITIES ........................................................................................ II

PRELIMINARY STATEMENT ..................................................................................... 2

STATEMENT OF MATERIAL FACTS............................................................................ 3

PROCEEDINGS TO DATE .......................................................................................... 6

MEMORANDUM OF LAW ......................................................................................... 7

   1.   CHALLENGES TO VENUE – BASIC PRINCIPLES. .................................................. 7

   A.   VENUE IS PROPER FOR CLAIMS I AND II BECAUSE A TAX SALE CERTIFICATE IS PROPERTY LOCATED WITHIN THIS DISTRICT. ....................................................................... 8

   B.   VENUE IS PROPER FOR CLAIM III BECAUSE A SUBSTANTIAL PART OF THE EVENTS GIVING RISE TO THE CLAIM OCCURRED WITHIN THIS DISTRICT.......................................... 11

   2.   TRUITT'S REQUEST TO TRANSFER THIS ACTION TO MARYLAND SHOULD BE DENIED. .... 12

   A.   PLAINTIFFS' CHOICE OF FORUM, ITS "HOME FORUM," IS THE OVERRIDING CONSIDERATION. .................................................................................................. 14

   B.   TRUITT HAS NOT SHOWN THAT THE CONVENIENCE OF WITNESSES AND LOCATION OF DOCUMENTS FAVOR MARYLAND OVER NEW JERSEY ............................................... 15

   3.   TRUITT'S CLAIM THAT THE PUBLIC INTEREST SOMEHOW FAVORS MARYLAND IS UNAVAILING. ........................................................................................................ 18

CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

2215 Fifth St. Assoc., LP v. U Haul Int'l, Inc., 148
 F. Supp. 2d 50 (D.D.C. 2001)...........................10

EEOC v. University of Pa., 850 F.2d 969 (3d Cir. 1988) ...19

Gardipee v. Petroleum Helicopters, Inc., 49 F. Supp.
 2d 925 (E.D. Tex. 1999)................................16

Hooker v. Chem. & Plastics Corp. v. Diamond Shamrock
 Corp., 87 F.R.D. 398 (W.D.N.Y. 1980)..................19

Iragorri v. United Technologies, Inc., 274 F.3d 65 (2d
 Cir. 2001)............................................20

Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir.
 1995).............................................13, 16

Kollmorgen Corp. v. Gettys Corp., 760 F. Supp. 65 (D.
 Del. 1991)........................................14, 17

Lawrence v. Xerox, 56 F. Supp. 2d 442 (D.N.J. 1999) ..13, 18

Leeshore Calgift Corp. v. Total Graphics, Inc., 668 F.
 Supp. 412 (M.D. Pa. 1986).............................17

L.L. Smith Trucking Co. v. Hughes Bros. Aircrafters,
 Inc., NO. CV-00-1183-HU, 2001 WL 267694 (D.Or. Mar.
 8, 2001)..............................................16

Moore Corp. v. Wallace Computer Svcs., Inc., 898 F.
 Supp. 1089 (D. Del. 1995)

Myers v. American Dental Ass'n, 695 F.2d 716 (3d Cir.
 1982)..................................................7

Park Inn Int'l, L.L.C. v. Mody Enter., Inc., 105 F.
 Supp. 2d 370 (D.N.J. 2000).........................11-13

Print Data Corp. v. Morse Fin., Inc., 01-CV-4430(WGB),
 2002 WL 1625412 (D.N.J. July 12, 2002).................8

Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir.
    1970) ................................................ 13

Simon v. Ward, 80 F. Supp. 2d 464 (E.D. Pa. 2000) ........ 7

Sundance Rehabilitation Corp. v. Senior Living
    Properties, LLC, 2001 WL 683766 (E.D. Pa. 2001) ....... 12

Unix Sys. Lab., Inc. v. Berkeley Software Design,
    Inc., No. 92-1667, 1993 WL 414724 (D.N.J. Mar. 3,
    1993) ................................................ 10

## FEDERAL STATUTES

28 U.S.C. §1391(a) ............................... 7, 10, 12

28 U.S.C. §1404(a) ........................... 2, 12, 17, 20

Fed.R.Civ.P. 12(b)(6) .................................. 20

## STATE STATUTES

New Jersey Tax Sale Law, N.J.S.A. §54:5-1, et seq. .... 9, 10

## PRELIMINARY STATEMENT

In the pending motion, defendant Truitt Enterprises, LLC ("Truitt") challenges venue and seeks dismissal or transfer to the District of Maryland, Truitt's selected venue for its later-filed action against American Bankers and Fortis, Inc.  (Fortis Asset Management ("Fortis"), a Division of Fortis, Inc., is the investment manager for American Bankers.)[1]

The Court should deny Defendant's motion for the following reasons:

- Truitt has not and cannot meet its burden to show improper venue as to the first two claims, because its breach of contract relates to the sale of "property" located in New Jersey.

- Truitt has not and cannot meet its burden to show improper venue as to the third claim, because Defendant's acts, constituting multiple breaches of contract, occurred while Defendant was physically in New Jersey and concerned New Jersey property.

- Truitt has not and cannot meet its burden to show that transfer pursuant to 28 U.S.C. §1404(a) is warranted. The following factors are beyond dispute and dispositive:  (i) New Jersey is Plaintiffs' "home forum" and its choice is entitled to great deference; (ii) many of the events and property underlying this dispute are centered in New Jersey; (iii) Truitt does not and cannot show that New Jersey is a burdensome venue; and (iv) Truitt does not and cannot show that the documents and witnesses it requires for the case are unavailable in New Jersey.

---

[1] Truitt also seeks dismissal of American Bankers' first claim for relief, which avers a breach of fiduciary duty.  Plaintiffs voluntarily withdraw the first claim, reserving their right to file an Amended Complaint.

- Finally, Truitt's "equity" argument holds no water.
  Having received Truitt's litigation attorney's "Notice
  of Breach," American Bankers was not obligated to sit
  back and wait to be sued at a time and place of
  Truitt's choosing.  Once Truitt formally (and
  incorrectly) declared Plaintiffs "in breach," it put
  litigation "in play."  Having embarked on that extreme
  course, Truitt has no cause to complain simply because
  it was beaten to the punch.

### STATEMENT OF MATERIAL FACTS[2]

Plaintiffs American Bankers Insurance Company of Florida,

American Bankers Life Assurance Company of Florida, American

Reliable Insurance Company, and Federal Warranty Service

Corporation (collectively, "Plaintiffs" or "American Bankers")

are investors in tax sale certificates ("certificates" or

"TLCs," in Truitt's papers) issued by governmental entities in

various jurisdictions, including many of the municipalities in

New Jersey.  Plaintiffs' investment manager is Fortis, which

operates out of New York City.  (Complaint ¶5).

Tax sale certificates are readily described.  Unpaid taxes

or other related charges (e.g., water and sewer charges) create

a lien on real property.  (Complaint ¶10).  When the property

owner becomes delinquent on such taxes or charges, after a

period of time, the lands are sold at tax sale by the

---

[2] We use the following abbreviations for citation purposes: the
complaint in this action: "Complaint"; the complaint filed by Truitt in
Maryland: "Maryland Complaint"; Defendant's moving brief: "D. Brf."; the
Declaration of William J. Murphy: "Murphy Decl."; the Declaration of James F.
Truitt, Jr.: "Truitt Decl."; the Declaration of John F. Sheehan: "Sheehan
Decl."

governmental entity to investors, such as American Bankers. (Complaint ¶10). The purchaser typically receives a tax sale certificate evidencing the transaction. An investor earns money: (i) if the certificate "redeems" (that is, when the property owner or other interested party pays the delinquent tax), at which time the investor receives principal and, usually, interest; or (ii) if the certificate is foreclosed, for which the investor receives fee simple title to the underlying property. (Complaint ¶¶10-11).[3]

Pursuant to an Agreement dated December 14, 2000 (the "Agreement," attached as Ex. A. to the Complaint and the Maryland Complaint), Truitt undertook to act as Plaintiffs' agent to acquire and service their portfolio of tax liens (the "Tax Lien Portfolio"). The Agreement followed two prior agreements, the first executed in 1994. (Complaint ¶13). Under the Agreement, Truitt was authorized to purchase for American Bankers "a portfolio of up to at least $35 million of TLCs [tax lien certificates]." (Complaint ¶14b).

On February 10, 2003, after unsuccessful resolution of a dispute, Truitt's litigation attorney wrongfully asserted that American Bankers was required to give Truitt additional funds to acquire more tax sale certificates. Truitt's litigation

---

[3] This is the procedure in New Jersey. Other jurisdictions have different procedures, but the basic concept is the same.

4

attorney, William J. Murphy, precipitously sent Fortis a "Notice of Breach Letter." (Murphy Decl. Ex. 1). Attorney Murphy asserted that American Bankers' refusal to provide more money constituted a breach of the Agreement. Id. Importantly, attorney Murphy's position relied on a fundamental misinterpretation of the Agreement. Under §7(a) of the Agreement, any refusal by Plaintiffs to reinvest principal was not a "breach;" rather, in such circumstances, Truitt was entitled only to "an amount equal to 1% of such principal amount."[4] Attorney Murphy's defective "notice of breach" demanded a response by Friday, February 14, 2002.

On Thursday, February 13, 2003, John F. Sheehan, Esq., Fortis's in-house counsel, contacted attorney Murphy. During a brief telephone conversation, Mr. Sheehan acknowledged receipt of attorney Murphy's letter and stated that it was being reviewed, and that Fortis would get back to him. (Sheehan Decl. ¶5). Sheehan never "urged" attorney Murphy not to commence a lawsuit.[5] Nor did attorney Murphy ask Plaintiffs not to file suit during this period. Id.

On Tuesday, February 18, 2003, American Bankers sent a notice of termination to Truitt. At the same time, American

---

[4] As a predicate factual matter, American Bankers also disputes that it had any obligation to continuing funding under §2 of the Agreement at this time.

[5] Murphy's recollection on this point, as stated at ¶8 of his Declaration, is inaccurate.

Bankers commenced this action, asserting three claims. The first and second claims seek damages for Truitt's wrongful interference with American Bankers' attempt to sell its portfolio of tax sale certificates. The third seeks damages arising from Truitt's purchase of Certificates with an interest rate beneath the "minimum face value yield," as set by the Agreement.

The specific facts underlying Plaintiffs' claims are set out in detail in the Complaint. The salient points that relate to the venue issues here are (i) a substantial portion of the Portfolio consists of New Jersey tax sale certificates and (ii) Truitt's multiple breaches of §7(a) of the Agreement resulted from activities that physically occurred within New Jersey and related to New Jersey property. (Complaint ¶¶ 22, 33).

## PROCEEDINGS TO DATE

On February 18, 2003, Plaintiffs commenced this action by filing the Summons and Complaint.

Two days later, on February 20, 2003, Truitt (and its principal's law firm James F. Truitt, Jr. P.A.) commenced a lawsuit in the Circuit Court for Baltimore County, Maryland, against American Bankers and Fortis, Inc. relating to the same transactions that are at issue here.

On February 26, 2003, American Bankers removed the Maryland action to the United States District Court for the District of Maryland.

On March 14, 2003, Truitt, in this action, brought the instant motion to dismiss or transfer.

On March 18, 2003, American Bankers moved to dismiss the Maryland action.  American Bankers' primary argument is that Truitt's Maryland action must be dismissed because the claims asserted are compulsory counterclaims in this action.  (A copy of American Bankers' memorandum of law is attached as Exhibit A to the Declaration of Andrew T. Solomon).

## MEMORANDUM OF LAW

1. Challenges to Venue - Basic Principles.

Because this is a diversity case, venue is governed by 28 U.S.C. §1391(a), which provides, in relevant part, that a civil action may be brought in

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated ....

As Defendant concedes, Third Circuit authority places the burden of showing that venue is improper squarely on the moving party.  See Myers v. American Dental Ass'n, 695 F.2d 716, 725 (3d Cir. 1982), cert. denied, 462 U.S. 1106 (1983); Simon v. Ward, 80 F. Supp. 2d 464 (E.D. Pa. 2000).  Equally unassailable

are the principles that (i) "venue may be appropriate in multiple districts," and that (ii) a "plaintiff 'ordinarily enjoys the advantage of choosing [venue], within the constraints set forth by §1391.'"  Print Data Corp. v. Morse Fin., Inc., Civ. No. 01-CV-4430(WGB), 2002 WL 1625412 (D.N.J. July 12, 2002).

Application of these principles compels the conclusion that venue is proper in this Court.

a. Venue Is Proper For Claims I and II Because A Tax Sale Certificate Is Property Located Within This District.

The gravamen of Plaintiffs' first two claims is Truitt's misconduct relating to a portfolio of assets, a substantial portion of which consists of property located in New Jersey. This fact, one that Truitt seeks to gainsay, is fatal to Truitt's venue challenge.

Thus, in a gambit to distance the tax sale certificates from the underlying properties, Truitt avers that the "TLCs [sic] are not deeds or titles to real property; they are mere certificates that provide the holder with certain rights to collect delinquent taxes, penalties, and interest." (D. Brf. at p. 16) (emphasis added).  Truitt is wrong.  In fact, a tax sale certificate, while not a "title" or "deed," is much more than "a mere certificate," and by statute is, in fact, a fee interest in

the underlying property – albeit one without a right of entry and one that is subordinate to an owner's right of redemption.

A tax sale certificate is created by statute; in New Jersey it is N.J.S.A. §54:5-1, et seq. (the "Tax Sale Law"). Unpaid taxes, whether delinquent or not, are a "continuous lien on the land on which they are assessed." N.J.S.A. §54:5-6. Such municipal liens are first liens, "paramount to all prior or subsequent alienations, except subsequent municipal taxes." N.J.S.A. §54:5-9. When taxes are in arrears after a certain date, the tax collector must "enforce the lien by selling the property." N.J.S.A. §54:5-19 (emphasis added). Following certain notice procedures, the collector sells "at public auction each parcel of real property which has been so advertised, upon which municipal liens remain unpaid ...." N.J.S.A. §54:5-31 (emphasis added). The sale is "made in fee ... subject to redemption at the lowest rate of interest." N.J.S.A. §54:5-32 (emphasis added). The purchaser of a property at tax sale receives a tax sale certificate, which states that the municipality sold the "lands in the municipality" to the purchaser and which contains additional information such as the certificate amount, the interest rate, the name of the assessed owner and the like. N.J.S.A. §54:5-47 (emphasis added). The certificate may be recorded and indexed with the county registrar of deeds. N.J.S.A. §54:5-50.

9

As noted, land sold at a tax sale is subject to a right of redemption – N.J.S.A. §54:5-54 provides that any person, such as the owner or a mortgagee, with "an interest in land sold for municipal liens, may redeem it at any time within ... 2 years from the date of sale ... by paying to the collector ...the amount required for redemption." (Emphasis added). The redemption amount is calculated pursuant to N.J.S.A. §54:5-58. After the 2-year period, if the certificate has not been redeemed, the holder may institute an action to foreclose the right of redemption. N.J.S.A. §54:5-86. A certificate holder, who successful bars the right or redemption through foreclosure, vests to "an absolute and indefeasible estate of inheritance in fee simple," subject only to subsequent municipal liens. N.J.S.A. §54:5-87.

Because American Bankers, in purchasing through Truitt, New Jersey certificates that, by statute, constitute "land" and "real property" situated in New Jersey, and because that "land" and "real property" is at the core of this dispute, venue is proper under 28 U.S.C. §1391(a)(2). See Unix Sys. Lab., Inc. v. Berkeley Software Design, Inc., No. 92-1667, 1993 WL 414724, *11 (D.N.J. Mar. 3, 1993)(venue proper in New Jersey in trade secret and trademark dispute, because "trademark[s] are located ... in New Jersey"); see also 2215 Fifth St. Assoc., LP v. U Haul Int'l, Inc., 148 F. Supp. 2d 50, 57 (D.D.C. 2001)("Given the

location of the Property and the centrality of the Property to

the negotiations regarding the Option Agreement, venue properly

lies here in the District").[6]

   b. Venue Is Proper For Claim III Because A Substantial Part Of
      The Events Giving Rise To The Claim Occurred Within This
      District.

   Plaintiffs' third claim, for breach of contract, is

properly venued in New Jersey because the breach occurred here

and concerns property located here.   Indeed, the facts at issue

are the antithesis of those that might support a venue

challenge.

   This Court has held that, "The 'substantial part of the

events' standard is intended to preserve the element of fairness

so that a defendant is not haled into a remote district having

no relationship to the dispute."   See Park Inn Int'l, L.L.C. v.

Mody Enter., Inc., 105 F. Supp. 2d 370, 376 (D.N.J. 2000).   Far

from "remote," this District has a direct and overriding

relationship with the facts.

   The third claim alleges that Truitt, acting as American

Bankers' agent, purchased certificates in New Jersey that were

beneath the minimum "face value yield" set in the Agreement.   As

noted above, certificates are acquired at auctions that

---

[6] While Plaintiffs demonstrate that a tax sale certificate is actually a
property interest (i.e., much more than a "mere" paper certificate), it also
remains undeniable that the Portfolio also includes New Jersey real estate
held in fee simple, acquired through the foreclosure of tax sale
certificates.

physically take place in New Jersey.  In other words, the Agreement at issue was <u>indisputably performed and breached in New Jersey</u>.

It is elemental, under these circumstances, that venue is proper here.  <u>See Park Inn Int'l</u>, 105 F. Supp. 2d 370, 375-76 (D.N.J. 2000); <u>see also</u> <u>Sundance Rehabilitation Corp. v. Senior Living Properties, LLC</u>, 2001 WL 683766, *5 (E.D.Pa. 2001)(venue proper in district, where omission giving rise to cause of action occurred).  Nor could Truitt argue "unfairness," when its employees, for many years, attended numerous auctions in New Jersey.

Because the Agreement was performed and breached in New Jersey, venue is proper in this Court under 28 <u>U.S.C.</u> §1391(a)(2).

2. Truitt's Request To Transfer This Action To Maryland Should Be Denied.

   28 <u>U.S.C.</u> §1404(a) provides:

   for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The decision to transfer is in the "sound discretion of the court," but must be exercised in the context of "certain factors enunciated by the Supreme Court and further enunciated by the Third Circuit."  <u>Park Inn Int'l</u>, 105 F. Supp. 2d at 377 (citing <u>Lony v. E.I. DuPont de Nemours & Co.</u>, 886 F.2d 628, 631-32 (3d

Cir. 1989); <u>Danka Funding, L.L.C. v. Page Scrantom, Sprouse,</u>
<u>Tucker & Ford, P.C.</u>, 21 F. Supp. 2d 465, 474 (D.N.J. 1998); <u>Gulf</u>
<u>Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947); <u>Jumara v.</u>
<u>State Farm Ins., Co.</u>, 55 F.3d 873, 879-90 (3d Cir. 1995)).
Those factors, the <u>Park Inn Int'l</u> court explained, are:

> (1) the "plaintiffs' forum preference," (2) the
> "defendant's preference"; (3) "whether the claim arose
> elsewhere"; (4) "the convenience of the parties as
> indicated by their relative physical and financial
> condition," (5) "the convenience of the witnesses—but
> only to the extent that the witnesses may actually be
> unavailable for trial in one of the fora," and (6)"the
> location of books and records (similarly limited to
> the extent that the files could not be produced in the
> alternative forum)."

<u>Id.</u>, at 377 (quoting <u>Jumara</u> 55 F.3d at 879). A plaintiff's
choice of forum, "unless the balance is strongly tipped in favor
of the defendant," should not be disturbed. <u>Id.</u>, at 377
(quoting <u>Gulf Oil</u>, 330 U.S. at 580); <u>see</u> <u>also</u> <u>Shutte v. Armco</u>
<u>Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970), <u>cert. denied</u>, 401
U.S. 910 (1971)(plaintiff's choice of forum paramount).

Finally, "the burden establishing the need for transfer ...
rests with the movant." <u>Id.</u>, at 377 (quoting <u>Jumara</u>, 55 F.3d
879). It is not the Plaintiffs' burden "to show the proposed
alternative forum is inadequate." <u>Lawrence v. Xerox</u>, 56 F.
Supp. 2d 442, 451 (D.N.J. 1999). As demonstrated below, Truitt
has not and cannot carry this burden.

a. Plaintiffs' Choice of Forum, Its "Home Forum," Is The
Overriding Consideration.

Truitt attempts to diminish the validity of Plaintiffs'
choice of this forum, contending this is not the "home forum"
for plaintiffs and incorrectly asserting that none of "the
operative facts in this dispute" arose here.  (D. Brf. at p.
20).  These contentions are factually and legally incorrect.

First, as Truitt concedes, American Bankers manages and
runs the tax lien portfolio through its investment manager,
Fortis, in downtown Manhattan.  (Sheehan Decl. at ¶1).[7]  That
does not mean that the Southern District of New York is Fortis's
only "home forum," as this court is but 15 miles from Fortis's
offices.  See Kollmorgen Corp. v. Gettys Corp., 760 F. Supp. 65,
67 (D. Del. 1991)("'Home Turf' has been defined as the forum
closest to the [plaintiff's] home in which [the plaintiff] could
effect personal service over the principal defendant").  With
New York's jurisdiction over Defendant questionable, Newark
became Plaintiffs' "home turf."

In addition, Plaintiffs' choice of this forum is further
validated by this District's substantial connection with the
acts giving rise to the lawsuit.  See Kollmorgen, supra, at 67.

_____

[7] In its Maryland Complaint, Truitt, in fact, alleges that, "at some
point in 2001," Fortis took over as agent for American Bankers in connection
with the tax lien portfolio.  (Md. Complaint at ¶18).

14

On the other side of the balance, Truitt professes its desire to proceed in Maryland over this forum, but produces no evidence of hardship (extreme or otherwise) of the sort that would actually prevent it from litigating here.  All Truitt proffers is the conclusory statement that "it would be a serious impediment" to litigate in New Jersey.  (D. Brf., at p. 22). That Truitt chose to terminate employees as a result of having less work does not prove penury or a lack of resources. Moreover, except for perhaps its desire to shift to Plaintiffs the modest travel expenses at issue, Truitt fails to explain why litigating in New Jersey might be "prohibitively expensive," as compared to litigating in Maryland.

Whatever additional modest expense or inconvenience that Truitt might incur in this forum, Truitt falls far short of what is required to satisfy the heavy burden to surmount Plaintiffs' choice of forum.

b. Truitt Has Not Shown That The Convenience Of Witnesses and Location of Documents Favor Maryland Over New Jersey

Truitt claims that the convenience of witnesses favors Maryland over New Jersey, listing Daniel T. Kusic (Va.), Will Harris (Md.), Michael Stesch (Md.), Tracy Johnson (Md.) and Rob Fischer (Md.).  Geographic location of these witnesses, however, is not the standard in this Circuit.  Rather, the test is whether these "witnesses may actually be unavailable for trial

in one of the fora." See Jumara, 55 F.3d at 879. Truitt makes

no showing that this is the case. Indeed, most of the

identified witnesses are Truitt's former employees or paid

consultants. Truitt does not contend that they would be

unwilling or unable to testify in New Jersey. In fact, Truitt

fails even to assert that New Jersey would present a significant

hardship. Nor could it -- the distance from Maryland or

Virginia to New Jersey is easily covered by car or train.

Minimal inconvenience to Defendant's witnesses is not sufficient

to overcome Plaintiffs' choice of forum. See, e.g., L.L. Smith

Trucking Co. v. Hughes Bros. Aircrafters, Inc., NO. CV-00-1183-

HU, 2001 WL 267694, *8 (D.Or. Mar. 8, 2001).

Truitt makes the same error with regard to documents. Even

accepting that most of Defendant's documents are located in

Maryland, Truitt fails to show that they could not be obtained

for use in this lawsuit, or that they are so voluminous that

transport costs would be prohibitive. See Gardipee v. Petroleum

Helicopters, Inc., 49 F. Supp. 2d 925, 931 (E.D. Tex.

1999)("Typically, the location of documents and business records

is given little weight, unless said documents 'are so voluminous

that their transport is a major undertaking.'"; quoting Met-L-

Wood Corp. v. SWS Indus., Inc., 594 F. Supp. 706, 710 (N.D.Ill.

1984)). Indeed, with modern technology, it is hard to see how

this factor could be afforded significant weight.

On the other hand, Newark is clearly more convenient for American Bankers' counsel and witnesses, most of whom work or reside within the State of New York and, in the case of Carl D. Poplar, Esq., New Jersey. (See Sheehan Decl. at ¶¶6-9).[8]  The function of a 1404(a) transfer motion is not simply to shift the inconvenience to a plaintiff -- who chose the forum -- in favor of the Defendant.  See Kollmorgen, 760 F. Supp. at 67 ("many courts have reasoned that transfer is inappropriate when to do so merely shifts the burden from the defendant to the plaintiff").

The burden is on Truitt to show that New Jersey is more inconvenient for witnesses than Maryland.  Having failed to adduce any evidence supporting such an assertion, this factor cannot overcome the weight of Plaintiffs' choice of this forum. See Leeshore Calgift Corp. v. Total Graphics, Inc., 668 F. Supp. 412, 416 (M.D. Pa. 1986)(denying transfer motion; plaintiff's choice of forum cannot be overcome, where movant fails to provide sufficient information about witness hardship).

---

[8] Plaintiffs' planned witnesses include: Perry Mandarino, C.P.A. of New York (Plaintiffs' expert); Sean Lock of New York, James Brinkerhoff of New York; William Bintzer of New York; Joel Cooper of New York; and John F. Sheehan of New York (see Sheehan ¶¶6, 7).  Plaintiffs also might call certain witnesses resident in Indiana, Florida and Maryland.

3. Truitt's Claim That The Public Interest Somehow Favors
   Maryland Is Unavailing.

   To assail the New Jersey forum, Truitt impermissibly

attempts to litigate the merits of Plaintiffs' claim.  (D. Brf.

at p. 23-24).  Obviously that argument has no place here.

   With regard to the relative congestion in the two

districts, Truitt's argument is, at best, half-hearted.  While

Maryland might take civil cases to trial slightly faster, the

average time from filing to disposition, by Truitt's

characterization, is "roughly the same."  (D. Brf. at p. 26).

("Roughly the same," not surprisingly, translates to the

District of New Jersey outranking Maryland 26th to 34th.)  Indeed,

the number of actions (civil and criminal) filed in 2002 per

judge is, in fact, substantially lower in this District than in

Maryland (445, as compared to 524).

   To the extent that the interests of justice and judicial

economy favor this dispute being resolved in a single forum,

rather than in two (as a result of Truitt's later-filed action

in Maryland), the first-filed rule controls.  See Lawrence, 56

F. Supp. 2d at 454 (transferring case to Texas based on first-

filed rule).

   Truitt, to escape the impact of this well-settled doctrine,

invents an equity argument that is pure fiction.  As stated

above, attorney Sheehan never "urged TE [Truitt] to take no

legal action until Fortis was able to respond to the Notice of Breach," during his conversation with Mr. Murphy. (Sheehan Decl. ¶5, rebutting Murphy Dec. at ¶8). A sophisticated group of lawyers like Truitt and his counsel, having decided to send an aggressive (and inaccurate) "Notice of Breach" letter, all but invited a lawsuit. American Bankers was under no legal obligation to prostrate itself and wait for Truitt to sue in the forum of Truitt's choosing, particularly given the gravity of Truitt's multiple breaches and concerted effort to thwart their attempts to sell the Portfolio.

A similar "equity" argument arose in Hooker v. Chem. & Plastics Corp. v. Diamond Shamrock Corp., 87 F.R.D. 398, 402 (W.D.N.Y. 1980). There, the defendant objected to plaintiff's earlier filing, because the filing occurred on the very day that the parties met to discuss the dispute. The Court, in rejecting the argument, observed, "The fact that Hooker filed first, while continuing to negotiate, could simply be the mark of a prudent lawyer." Id. at 402. Sophisticated parties, the Court continued, "cannot be heard to cry foul when one party exercises its right to sue first." Id.

The case that Truitt relies on, EEOC v. University of Pa., 850 F.2d 969, 976 (3d Cir. 1988), aff'd, 493 U.S. 182 (1990), is inapposite. There, defendant's motivation for commencing the first-filed action in the District of Columbia was to avoid

19

substantive Third Circuit interpretations of federal law, which
is the type of "forum shopping" strongly condemned by federal
courts.  Here, American Bankers did what every plaintiff does in
every lawsuit: it filed in the most convenient available forum,
which is perfectly appropriate and which does not diminish the
weight of its choice of forum.  See Iragorri v. United
Technologies, Inc., 274 F.3d 65, 72 (2d Cir. 2001)(en banc).[9]
Truitt has not contended that this Court, sitting in diversity,
will apply different substantive law than Maryland, which might
arguably be considered impermissible forum shopping.

Plaintiffs did not act inequitably; the District of New
Jersey is not more congested that the District of Maryland; and
the first-filed rule requires that this action, not the later-
filed Maryland action, proceed.  Thus, the interests of justice
weigh heavily against Defendant's transfer request.

### CONCLUSION

For the reasons set forth above, Defendant's motion to
dismiss the Complaint for improper venue and its motion to
transfer the action pursuant to 28 U.S.C. §1404(a) should be
denied.  With respect to Defendant's motion to dismiss the First

---

[9] See also Moore Corp. v. Wallace Computer Svcs., Inc., 898 F. Supp.
1089, 1099 (D. Del. 1995)(distinguishing EEOC: "forum shopping" might justify
departure from "first-filed" rule, but only when it is the "sole motivating
factor for plaintiff's choice of forum").  Here, as shown above, New Jersey
has a substantial nexus with this dispute and is convenient for plaintiffs.

Claim, for breach of fiduciary duty pursuant to <u>Fed.R.Civ.P.</u>

12(b)(6), Plaintiffs voluntarily agree to withdraw that claim,

reserving their rights to file an Amended Complaint.

Respectfully Submitted,

Dated: March 31, 2003

POPLAR & EASTLACK
A PROFESSIONAL CORPORATION

By: _____

CARL D. POPLAR (CP 4791)
215 Fries Mill Road
Turnersville, NJ 08012
(856) 227-5575

Michael T. Sullivan (MS 3158)
Andrew T. Solomon (AS 9200)
SULLIVAN & WORCESTER LLP
292 Madison Avenue, 6th Fl.
New York, NY 10017
(212) 213-8200

Attorneys for Plaintiffs

To:
Murphy & Shaffer
Drinker Biddle & Reath
LLP

Attorneys for Defendant

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March 2003, a true and accurate copy of each of the foregoing PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS and/or TRANSFER, the DECLARATION OF ANDREW SOLOMON, and the DECLARATION OF JOHN SHEEHAN was furnished by telecopier and via overnight mail to the following attorneys for defendants:

Melissa L. Klipp
DRINKER BIDDLE & REATH LLP
500 Campus Drive
Florham Park, New Jersey  07932

William J. Murphy
MURPHY & SHAFFER
36 S. Charles Street, Suite 1400
Baltimore, MD  21201

March 31, 2003

_____
Andrew T. Solomon, Esq.