**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
– Northern Division –

| | | |
|---|---|---|
| TRUITT ENTERPRISES, LLC<br>1526 York Road<br>Lutherville, Maryland 21093<br><br>and<br><br>JAMES F. TRUITT, JR. P.A.<br>1526 York Road<br>Lutherville, Maryland 21093<br><br>Plaintiffs,<br><br>v.<br><br>FORTIS, INC.<br>One Chase Manhattan Plaza<br>New York, New York 10005<br><br>AMERICAN BANKERS INSURANCE GROUP, INC.<br>11122 Quail Roost Drive<br>Miami, Florida 33157<br><br>AMERICAN SECURITY INSURANCE COMPANY<br>260 Interstate North Circle<br>Atlanta, Georgia 30339<br><br>STANDARD GUARANTY INSURANCE COMPANY<br>260 Interstate North Circle<br>Atlanta, Georgia 30339<br><br>Serve: Steven B. Larsen<br>Maryland Insurance Commissioner<br>525 St. Paul Place<br>Baltimore, Maryland 21202 | ) | Civil Action No. CCB 03-527<br>(Consolidated with CCB 03-1422) |

UNION SECURITY LIFE INSURANCE )
COMPANY )
260 Interstate North Circle )
Atlanta, Georgia 30339 )
)
Serve: Steven B. Larsen )
Maryland Insurance Commissioner )
525 St. Paul Place )
Baltimore, Maryland 21202 )
)
AMERICAN BANKERS INSURANCE )
COMPANY OF FLORIDA )
11222 Quail Roost Drive )
Miami, Florida 33157 )
)
Serve: Steven B. Larsen )
Maryland Insurance Commissioner )
525 St. Paul Place )
Baltimore, Maryland 21202 )
)
AMERICAN BANKERS LIFE )
ASSURANCE COMPANY OF FLORIDA )
11222 Quail Roost Drive )
Miami, Florida 33157 )
)
Serve: Steven B. Larsen )
Maryland Insurance Commissioner )
525 St. Paul Place )
Baltimore, Maryland 21202 )
)
AMERICAN RELIABLE INSURANCE )
COMPANY )
8655 East Via de Ventura )
Scottsdale, Arizona 85258 )
)
Serve: Steven B. Larsen )
Maryland Insurance Commissioner )
525 St. Paul Place )
Baltimore, Maryland 21202 )
)

FEDERAL WARRANTY SERVICE CORPORATION )
14025 Riveredge Drive, Ste. 400 )
Tampa, Florida 33687 )

Serve: CSC Lawyer's Incorporating Service Co. )
11 E. Chase St. )
Baltimore, Maryland 21202 )

Defendants. )

## AMENDED COMPLAINT

Plaintiffs Truitt Enterprises, LLC (hereinafter "TE"), and James F. Truitt, Jr. P.A. (hereinafter "Truitt"), through their undersigned attorneys, hereby state their claims for declaratory relief and for breach of contract against defendants Fortis, Inc. ("Fortis"), American Bankers Insurance Group, Inc. ("ABIG"), American Security Insurance Company ("ASIC"), Standard Guaranty Insurance Company ("SGIC"), Union Security Life Insurance Company ("USLIC"), American Bankers Insurance Company of Florida ("ABIC/FL"), American Bankers Life Assurance Company of Florida ("ABLAC/FL"), American Reliable Insurance Company ("ARIC"), and Federal Warranty Service Corporation ("FWSC").

## PARTIES AND JURISDICTION

1. Plaintiff TE is a Maryland limited liability company, whose principal place of business is located in Lutherville, Maryland.

2. Plaintiff Truitt is a Maryland professional association engaged in the practice of law. As set forth below, Truitt is a designated third-party beneficiary of a contract between TE and ABIG and ASIC.

3. Fortis is a Nevada corporation, whose executive offices are located in New York, New York. Fortis is a holding company for many corporations located in the United States that are engaged in the financial services industry, including insurance. Fortis is a subsidiary of Fortis Insurance Holding, N.V., a Netherlands corporation, which, with assets of more than $400 billion, is one of the largest financial services companies in the world.

4. ABIG is a Florida corporation, engaged in the business of insurance. Its principal place of business is located in Miami, Florida. In late 1999, ABIG was acquired by Fortis and became part of what is known as the Assurant Group.

5. ASIC is a Delaware corporation, engaged in the business of insurance. Its principal place of business is located in Atlanta, Georgia. In 1999, when Fortis acquired ABIG, the operations of ABIG and ASIC were merged to form the Assurant Group.

6. ABIC/FL is a Florida company with a principal place of business in Miami, Florida. ABIC/FL is a member of American Bankers Insurance Group and is one of the subsidiaries of ABIG that entered into the December 2000 Agreement attached hereto as Exhibit A.

7. ABLAC/FL is a Florida corporation with a principal place of business in Miami, Florida. ABLAC/FL is a member of American Bankers Insurance Group and is one of the subsidiaries of ABIG that entered into the December 2000 Agreement attached hereto as Exhibit A.

8. ARIC is an Arizona corporation with a principal place of business in Scottsdale, Arizona. ARIC is a member of American Bankers Insurance Group and is one of the subsidiaries of ABIG that entered into the December 2000 Agreement attached hereto as Exhibit A.

9. FWSC is an Illinois corporation with a principal place of business in Atlanta, Georgia. FWSC is a member of American Bankers Insurance Group and is one of the subsidiaries of ABIG that entered into the December 2000 Agreement attached hereto as Exhibit A.

10. USLIC is a Delaware corporation with a principal place of business in Atlanta, Georgia. USLIC was a signatory to the December 2000 Agreement attached hereto as Exhibit A.

11. SGIC is a Delaware corporation with a principal place of business in Atlanta, Georgia. SGIC was a signatory to the December 2000 Agreement.

12. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

13. This Court has jurisdiction over the persons of the defendants herein pursuant to §§ 6-103(b)(1), (b)(2), (b)(5), and (b)(6) of the Courts and Judicial Proceedings Article of the Maryland Code Annotated and Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure.

14. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

15. For many years, TE has been in the business of advising and assisting clients, principally financial institutions, with investments in tax lien certificates ("TLCs") purchased in local jurisdictions in several states, including Maryland, New Jersey, New York, Arizona, Indiana, Illinois, and the District of Columbia.

16. On May 16, 1997, TE entered into a contract with ABIG, then a Florida-based insurance company, pursuant to which TE was authorized, subject to certain guidelines and

limitations, to purchase in its discretion a portfolio of up to $30 million in TLCs, to service that portfolio, and to take appropriate actions to redeem or otherwise liquidate the TLCs. The term of this contract was to last until all TLCs included in the portfolio, which were to be purchased through December 31, 2000, either had been redeemed, liquidated, or determined by TE to be uncollectible. TE performed its services under the May 16, 1997 contract without complaint from ABIG, and TE assisted ABIG in receiving a substantial return on the funds invested in the TLC portfolio.

17. On December 14, 2000, TE entered into a new contract with ABIG, and the affiliates and subsidiaries set forth above, to become effective January 1, 2001. The December 14, 2000 contract is attached hereto as Exhibit A. Pursuant to the December 14, 2000 contract, ABIG and the other Fortis affiliates and subsidiaries described collectively in the contract as the "Assurant Group" or "A.G.," retained TE as their advisor with respect to the Assurant Group's continuing investments in TLCs.

18. Pursuant to the December 14, 2000 contract, the size of the investment portfolio that TE was to manage on the Assurant Group's behalf was increased to $35 million, and TE was authorized, subject to certain limitations and guidelines, and without obtaining additional consent from the Assurant Group, to purchase, service, and maintain a TLC portfolio of that size. At TE's discretion, the principal amounts of any TLCs redeemed or liquidated by TE through December 31, 2003 were to be reinvested in new TLCs. After December 31, 2003, the proceeds from the liquidation and redemption of TLCs were to be retained by the Assurant Group.

19. The December 14, 2000 contract specified the fees to be paid to TE for its services, including a monthly acquisition fee of 1.5% of the principal amount of all TLCs purchased during that month, and a monthly servicing fee of 0.0625% of the aggregate principal amount of all

TLCs included in the portfolio on the last day of the month. The contract also called for the Assurant Group to pay for certain accounting and storage costs, at a rate of 0.03% of the aggregate principal amount of the TLC portfolio per month, and to reimburse or advance TE the costs it incurred for attorneys' fees, title company fees, service of process fees, auction fees and court costs in connection with the acquisition, perfection, foreclosure, redemption and liquidation of the TLCs in the portfolio.

20. In the December 14, 2000 contract, the Assurant Group authorized TE to provide for the retention of counsel for all legal actions affecting the TLCs in the portfolio. The Assurant Group specifically acknowledged that Truitt would be retained as Maryland counsel to represent the Assurant Group in connection with the redemption of TLCs or foreclosures of the underlying properties. Truitt was therefore an intended third-party beneficiary of the December 14, 2000 contract.

21. The December 14, 2000 contract also called for TE and the Assurant Group to share in the profits earned by the TLC portfolio in accordance with a detailed formula and subject to the maintenance of certain reserves for the benefit of the Assurant Group.

22. As was the case with the May 16, 1997 contract, the expiration of the term of the December 14, 2000 contract was tied to the redemption, liquidation and/or TE's determination of the uncollectibility of all the TLCs in the portfolio. The proceeds from the liquidation or redemption of TLCs in the portfolio were to be reinvested in new TLCs, at TE's discretion, through December 31, 2003.

23. The December 14, 2000 contract provided that the Assurant Group could terminate the agreement in advance of the expiration of its term only in the event that TE had breached any material term of the parties' agreement.

24. At some point during the year 2001, Fortis began to exercise direct responsibility for monitoring the TLC investment portfolio managed and serviced by TE on behalf of Fortis's subsidiaries in the Assurant Group, through the Fortis Asset Management Division in New York City. In November, 2001, Fortis unilaterally announced that it would not authorize TE to purchase any new TLCs, and requested TE to attempt to hasten the liquidation and redemption of the existing portfolio.

25. This peremptory decision by Fortis led to a series of meetings and negotiations between Fortis and TE, designed to compensate TE for the requested early termination of the contract, and to create incentives for TE to help arrange for Fortis's "bulk sale" of as much of the existing portfolio of TLCs as possible. On December 7, 2001, TE provided Fortis with a term sheet for the early termination and liquidation of the Fortis/Assurant Group investment portfolio.

26. During a period of protracted negotiations over this term sheet, Fortis persisted in its refusal to authorize the Assurant Group to provide continuing funding for TE to purchase or reinvest proceeds in additional TLCs, and it delayed the contract payments to TE and Truitt for their specified fees, profit sharing, and outstanding invoices. On January 11, 2002, TE issued a formal notice of breach to Fortis and the Assurant Group, and asked Fortis to designate a new servicing agent for the existing portfolio.

27. After reviewing TE's notice of breach, and discussing the outstanding issues with TE and its representatives, Fortis reconsidered its position and decided in January, 2002, to continue in full force and effect the terms of the December 14, 2000 contract. TE agreed to waive any claims for damages resulting from the reduction in acquisition and servicing fees it had suffered during the period between November 2001 and January 2002, and Fortis agreed to a new commission

agreement with TE, predicated on Fortis's anticipated sale of all or any significant portion of the existing TLC portfolio to a third party. That commission agreement was finalized and fully executed by the parties on March 13, 2002, and was expressly incorporated into the terms of the December 14, 2000 contract. The commission agreement is attached hereto as Exhibit B.

28. During the period from January 24, 2002 through the end of January, 2003, TE continued in its role of investing in and servicing TLCs on behalf of Fortis and the Assurant Group, purchasing new TLCs within the applicable guidelines, redeeming and liquidating TLCs as appropriate, engaging in "bulk sales" of significant portions of the existing portfolio, and seeking, on Fortis's behalf, to find a buyer for the total portfolio. TE performed its services well, earning approximately a 9% rate of return for Fortis and the Assurant Group on the investment portfolio during 2002. TE also located several prospective purchasers for the TLC portfolio, including one who submitted a substantial bid to Fortis in December, 2002.

29. On February 4, 2003, TE received an e-mail message from Fortis questioning whether TE planned to bid on and purchase new TLCs at an upcoming sale in Bayonne, New Jersey. This e-mail acknowledged that "under the agreement, you are within your rights to purchase new liens." TE responded with the details of the requirements for the upcoming Bayonne sale, and noted that the lead potential purchaser of the entire portfolio was interested in ensuring that TE continue to acquire new TLCs for that portfolio.

30. On February 6, 2003, TE requested a wire transfer of $1.5 million from Fortis, on behalf of ABIG, for the potential purchase of TLCs in Maricopa County, Arizona. On February 6, 2003, the aggregate principal balance of the investment portfolio was approximately $28 million, substantially less than the $35 million limit imposed by the parties' contract. Nonetheless, Fortis

refused to wire the requested funds, and once again stated that it may seek to terminate the contract before the expiration of its term.

31. On February 10, 2003, TE gave formal notice to Fortis that ABIG and the affiliated companies of the Assurant Group were in breach of the December 14, 2000 contract by refusing to finance TE's planned purchase of new TLCs in Maricopa County and other jurisdictions, within the $35 million limit imposed by the contract. This notice also provided assurance to Fortis that the planned purchases of new TLCs had been approved by the prospective buyer for the investment portfolio, and that the buyer had indicated a willingness to pay 100% of face value for new TLCs purchased by TE through the date of acquisition. TE asked Fortis once again to reconsider, to provide assurances that the parties' contract remained in effect, and to provide TE with the necessary funding commitments to bid on TLCs at upcoming sales in Bayonne and Nassau County, New York.

32. On February 18, 2003, after presenting the issues to high-ranking officials of Fortis's parent company in the Netherlands, Fortis, on behalf of ABIG and the Assurant Group, and through newly-retained outside counsel, gave formal notice to TE purporting to terminate the December 14, 2000 contract. Fortis also requested TE to assist in the orderly transition of all its servicing and other responsibilities for the portfolio to ABIG's unnamed "replacement servicer." As justification for the purported early termination of the contract, Fortis's counsel simply referred to ¶ 7(b) of the contract, which provides that the Assurant Group "may terminate the agreement in the event that [TE] has breached any material term of this agreement . . . ." The notice, however, attached hereto as Exhibit C, did not specify any material term of the parties' contract that TE allegedly had breached, nor did it provide TE with an opportunity to cure.

33. In fact, TE has performed all of its obligations under the December 14, 2000 contract, and has continued to perform all its servicing, maintenance, foreclosure, liquidation and redemption functions in full compliance with the parties' agreement. Fortis, ABIG, and the affiliated members of the Assurant Group, on the other hand, have breached the December 14, 2000 contract by refusing to provide funds to TE to make investments in new TLCs, by delaying payments to TE for its acquisition, servicing and profit-sharing fees, and for the reimbursement of advanced costs and professional fees, and by wrongfully terminating the contract.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

34. Paragraphs 1 through 33 of the Complaint are incorporated herein by reference.

35. Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, FWSC, TE and Truitt are persons interested in the December 14, 2000 contract, and the parties' legal rights and obligations are governed and affected by that written agreement.

36. TE and Truitt contend that Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC are bound by the terms of the December 14, 2000 contract, and that the defendants have no valid reason to contend that plaintiff TE is in breach of that contract.

37. Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC have contended, to the contrary, that TE has breached material terms of the December 14, 2000 contract, without defining the breach or providing an opportunity to cure, and they have demanded that TE cooperate in the immediate transfer of the maintenance and servicing functions of an approximate $28 million TLC investment portfolio to another, as yet unnamed, servicing agent.

38. An actual controversy exists between the plaintiffs and defendants with respect to the parties' rights and obligations under the December 14, 2000 contract. A declaratory judgment entered by this Court may serve to terminate the disagreements and controversies that have arisen between the parties concerning their continuing rights and obligations under the December 14, 2000 contract.

WHEREFORE, plaintiffs TE and Truitt seek an order from the Court granting the following relief against defendants Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC:

(1) a speedy hearing on this action for declaratory judgment, pursuant to the state and federal declaratory judgment laws;

(2) a declaratory judgment that ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC, and through them Fortis, remain bound by the terms of the December 14, 2000 contract and the commission agreement dated March 13, 2002, which was incorporated therein by reference;

(3) an order directing defendants to continue to authorize TE to make purchases of new TLCs on behalf of ABIG and ASIC and other members of the Assurant Group, consistent with the terms of the December 14, 2000 contract;

(4) an order directing defendants to pay all outstanding and continuing invoices issued by plaintiffs TE and Truitt for services performed, expenses incurred, and fees earned pursuant to the terms of the December 14, 2000 contract;

(5) an order directing defendants to pay to plaintiffs their costs and expenses in pursuing this litigation, including plaintiffs' reasonable attorney's fees; and

(6) such other relief as the Court deems just and appropriate to terminate the existing controversies between the parties.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract — TE)**

39. The allegations of paragraphs 1 through 38 of the Complaint are incorporated herein by reference.

40. Plaintiff TE has performed its TLC investment portfolio management services in full compliance with all the material terms of the December 14, 2000 contract.

41. Defendants Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC, have materially breached the December 14, 2000 contract by announcing unilaterally that the contract has terminated, and by directing TE to turn over its portfolio maintenance and servicing functions to a new servicer. Defendants also have breached the December 14, 2000 contract by failing to pay outstanding invoices issued by TE in the approximate amount of $340,000.

42. As a direct result of the early termination of the December 14, 2000 contract, unilaterally announced by Fortis, on behalf of its affiliates and subsidiaries, TE will suffer the loss of additional acquisition and servicing fees, management fees, and profit sharing revenues in the approximate amount of $1,800,000.

WHEREFORE, plaintiff TE demands judgment against defendants Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC, in the full amount of $2,140,000.00 in compensatory damages, in addition to prejudgment interest, post-judgment interest, costs, including a reasonable attorney's fee, and such other relief as the Court deems just.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract — Truitt as Third Party Beneficiary)**

43. Paragraphs 1 through 42 of the Complaint are incorporated herein by reference.

44. Truitt is a designated third-party beneficiary of the December 14, 2000 contract in that the parties expressly intended that Truitt would perform certain legal services in connection with the redemption and foreclosure of TLCs purchased in Maryland by TE on behalf of the Assurant Group, and that Truitt would be paid for these legal services.

45. Defendants Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC, have breached the December 14, 2000 contract by announcing unilaterally that the contract has been terminated, without justification and without providing an opportunity to cure.

46. As a result of the defendants' unauthorized early termination of the December 14, 2000 contract, Truitt will suffer additional damages from lost fee income for professional services already performed or to be performed in the approximate amount of $1,500,000.

WHEREFORE, plaintiff Truitt demands judgment against defendants Fortis, ABIG, ASIC, SGIC, USLIC, ABIC/FL, ABLAC/FL, ARIC, and FWSC, in the full amount of $1,500,000.00 in compensatory damages, in addition to prejudgment interest, post-judgment interest, costs, including a reasonable attorney's fee, and such other relief as the Court deems just.

**JURY TRIAL DEMAND**

Pursuant to Federal Rule 38, plaintiffs elect a trial by jury of all issues triable of right by a jury in this action.

MURPHY & SHAFFER LLC

By: /s/ *William J. Murphy*
William J. Murphy (00497)
John J. Connolly (09537)

Suite 1400
36 South Charles Street
Baltimore, Maryland 21201
(410) 783-7000

*Attorneys for Plaintiffs*