IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

------------------------------------x
:
TRUITT ENTERPRISES, LLC, et al.,    :
:
Plaintiffs,    :
:
v.    :    Civil Action No. 1:03-cv-00527-CCB
:
FORTIS, INC., et al.,    :
:
Defendants.    :
:
------------------------------------x

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
ANSWERS TO INTERROGATORIES AND REQUEST FOR EXPENSES**

Defendants American Bankers Insurance Group, Inc. ("ABIG"), American Security Insurance Company ("ASIC") and Fortis, Inc. ("Fortis"), by their undersigned attorneys, Sullivan & Worcester LLP and Brown, Diffenderffer & Kearney, LLP, submit this memorandum in opposition to Plaintiffs' Motion to Compel Answers to Interrogatories and Request for Expenses.

The Court should deny the motion:

- Defendants fully responded to Plaintiffs' interrogatories (and document demands) to the extent required at this early stage;

- Plaintiffs' contention interrogatories are premature;

- Many of Plaintiffs' interrogatories are improperly overbroad and unduly burdensome;

- Defendants will supplement their responses once other discovery has been completed.

## INTRODUCTION

In December 2000, Truitt Enterprises entered into a tax lien acquisition and servicing agreement (the "Agreement") with ABIG[1] and ASIC.[2] In February 2003, ABIG terminated the Agreement following discovery of Truitt Enterprises' material breaches. The principal breach arose from Truitt Enterprises' acquisition of tax lien certificates ("TLCs") that failed to meet the minimum interest rate threshold: Section 2 of the Agreement forbade Truitt Enterprises from acquiring any TLC whose "minimum face value yield (including subsequent taxes and penalties)" was less than the "'hurdle rate' ... plus 425 basis points." Section 7 of the Agreement made this requirement material and specifically authorized termination "in the event that [Truitt Enterprises] ... breached any material term ..., including but not limited to, Section 2." No notice was required, nor was there a cure period -- a breach of Section 2 provided ABIG with the automatic right to terminate, a right it exercised.

A series of disturbing events preceded ABIG's termination. In late 2001, Fortis, which acted as ABIG's investment manager, determined to exit the tax lien business, a decision it communicated to Plaintiffs. After several rounds of sometimes contentious negotiations, the parties entered into a letter agreement that provided Truitt Enterprises with the opportunity to earn extraordinary additional compensation if it successfully arranged a bulk sale of ABIG's tax lien portfolios. At the same time, Fortis made it clear to Truitt Enterprises that it should refrain from investing in TLCs, except as required to preserve the value of the portfolio.

For a time, this arrangement worked. By late 2002 and early 2003, however, Truitt Enterprises took a confrontational stand and demanded millions of dollars with which to

---

[1] Truitt Enterprises acquired TLCs not for ABIG directly, but for ABIG's four subsidiaries: American Bankers Insurance Company of Florida, American Bankers Life Assurance Company of Florida, American Reliable Insurance Company and Federal Warranty Service Corporation.

[2] ASIC never participated under the Agreement and should not be a party to this action.

purchase new tax liens. In response, Fortis reminded Plaintiffs that, under the Agreement, ABIG was not required to purchase new tax liens, but could instead pay to Truitt Enterprises one percent of any principal amounts not reinvested.[3] Truitt Enterprises responded with a February 10, 2003 letter from its litigation counsel that declared ABIG in breach of the contract. As disturbing as that was, Truitt Enterprises also contacted one of the main bidders for ABIG's tax lien portfolio, telling them, in effect, that litigation would likely thwart any such sale.[4]

After Plaintiffs' lawyer's letter and after a thorough investigation, Fortis concluded that Truitt Enterprises had, itself, materially breached the Agreement. On that basis, and pursuant to the termination provisions of the Agreement, ABIG terminated and sued Truitt Enterprises for breach.

For the breach that precipitated the termination, no discovery is required. The simple question of whether a particular TLC cleared the "hurdle rate" is just arithmetic (the underlying data to perform these calculations has already been exchanged).[5] The other breaches alleged by Defendants are more factually complex,[6] but all have one common characteristic: the underlying factual events concern acts or omissions by (and known to) Truitt Enterprises and Attorney Truitt, not Defendants. Thus, while Defendants have threshold information evidencing additional breaches and misconduct, the underlying facts remain in the possession of either

---

[3] Section 7(a) "Term" of the December 2000 Agreement provides: "In the event that A.G. [ABIG] fails to reinvest the principal amount of any TLC redeemed or liquidated on or before December 31, 2003 … A.G. shall pay to T [Truitt Enterprises] an amount equal to 1% of such principal amount."

[4] Discovery has recently revealed additional facts showing that Truitt Enterprises and its advisors had been acting in bad faith with respect to ABIG's desire to dispose of its tax lien assets.

[5] To avoid any confusion on Plaintiffs' part, Defendants provided a supplemental interrogatory response, attached to the accompanying declaration of Andrew T. Solomon as Exhibit A, explaining precisely how Truitt Enterprises breached the hurdle rate requirement. See supplemental response number 19.

[6] For example, Defendants have reason to believe that Attorney Truitt filed false certifications in Indiana, attesting to work that his firm either did not perform or could not perform, in order to generate additional fees not contemplated by the contract. Defendants also believe that Truitt Enterprises and/or Attorney Truitt overcharged Defendants for title work negligently performed in Maryland.

Plaintiffs or third parties. Defendants intend to develop these issues through discovery, which has been scheduled, but has not yet taken place. In other words, Plaintiffs' interrogatories are premature, and it is for this reason, above all, that Defendants should not be required to respond to them at this time.[7]

## ARGUMENT

Interrogatories come in two kinds: "identification interrogatories" and "contention interrogatories." See 7 Moore's Federal Practice, §33.02[2][a]-[b] (Matthew Bender 3d ed.)("Moore's"). Identification interrogatories seek "to identify pertinent documents, tangible things or the identity of persons with knowledge of facts relevant to the interrogatories." Id., at §33.02[2][a]. Contention interrogatories may ask the responding party to:

> (1) state what it contends or whether it is making a certain contention, (2) explain the facts underlying its contention, (3) assert a position or explain that position with regard to how the law applies to the facts, or (4) articulate the legal or theoretical reason for a contention.

Id., at §33.02[2][b].

All of Plaintiffs' objectionable interrogatories are of the "contention" variety: They recite an allegation in Defendants' pleadings and then demand an open-ended recitation of "all facts concerning"[8] or the "substance of all communications"[9] underlying that particular

---

[7] Defendants raised additional objections, such as "undue burden" and "irrelevance" to certain interrogatories. These objections are discussed generally infra.

[8] Interrogatories Nos. 12, 13, 19, 20, 21 and 23 seek a description of "all facts" and the "substance of all communications" about Fortis' decision to restrict Truitt Enterprises' purchases; the notice of termination letter; Truitt Enterprises' breach of the minimum face value yield requirement; Plaintiffs' misconduct in Indiana; Plaintiffs' misconduct in Maryland, overcharging of expenses and self-dealing.

[9] Interrogatories Nos. 7 to 11 and 14 to 18 require Defendants to "state the substance of all communications" concerning the December 2000 Agreement, the Commission Agreement, complaints by Defendants, the sale of the portfolio, the replacement of Truitt Enterprises or Attorney Truitt, Truitt Enterprises' plan to purchase new TLCs in Bayonne or Nassau, Fortis's decision to liquidate the portfolio, Fortis's decision not to allow Truitt Enterprises to purchase in Arizona, TaxServe and any client of Tax Serve concerning the sale of the portfolio.

contention. (The last interrogatory, which is also a contention interrogatory, seeks a listing of all "admissions against interest" by Plaintiffs.)

While contention interrogatories are unquestionably permissible, see id., at § 33.02[2][b]; Jayne H. Lee, Inc. v. Flagstaff Industries Corp., 173 F.R.D. 651, 652 n.2 (D. Md. 1997); Capacchione v. Charlotte-Mecklenberg Schools, 182 F.R.D. 486, 489 (W.D.N.C. 1998), they are not always appropriate. Here, Plaintiffs' contention interrogatories are premature and burdensome and inefficient in the context of this lawsuit, where the relationship among the parties dates back to 1994; where the Defendants are multiple entities with numerous employees who have had some involvement with Plaintiffs, however marginal; and where deposition discovery is likely to cover most, if not all, of the same areas inquired through the interrogatories.

Premature. Because contention interrogatories often require a recitation of all facts concerning a particular issue or event, courts commonly order that responses are not required until after the conclusion of discovery.[10] This is the view adopted by the established commentators on federal discovery practice. See Moore's § 33.02[b] ("The better view is that contention interrogatories are appropriate, but only after both sides have had an opportunity to conduct discovery") and §33.41[4]; Wright, Miller & Marcus, Federal Practice and Procedure, Civil 2d § 2167. Importantly, this is also the view endorsed in this District and by other federal courts. See Jayne H. Lee, 173 F.R.D. at 653 n.2 ("the court may order that [a contention] ... interrogatory need not be answered until after designated discovery has been completed or until a pretrial conference or other later time") (citing Jones v. Goldstein, 41 F.R.D. 271 (D. Md. 1966)); see also McCarthy v. Paine Webber Group, Inc., 168 F.R.D. 448, 450 (D. Conn. 1996);

---

[10] Compare "identification interrogatories," which are appropriately propounded while discovery is "still in infancy." Fischer & Porter Co. v. Tolson, 143 F.R.D. 93, 95 (E.D. Pa. 1992); Moore's §33.41[3].

Fischer and Porter Co. v. Tolson, 143 F.R.D. 93, 95 (E.D. Pa. 1992)(contention interrogatories "are more appropriate after a substantial amount of discovery has been conducted"); B. Braun Med., Inc. v. Abbott Lab, 155 F.R.D. 525, 527 (E.D. Pa. 1994); Everret v. USAir Group, Inc., 165 F.R.D. 525, 527 (E.D. Pa. 1994). Here, Plaintiffs served the interrogatories at the outset of the discovery period, before documents were exchanged or depositions taken.[11] Defendants cannot possibly respond until discovery is concluded.

Plaintiffs insinuate that Defendants' refusal to respond to their interrogatories at this time impeaches the *bona fides* of Defendants' decision to terminate and sue. Hardly. In fact, as amplified in Defendants' supplemental interrogatory responses, Truitt Enterprises indisputably violated a material term of the Agreement, by repeatedly investing in TLCs that did not meet the minimum interest rate requirement, and Attorney Truitt engaged in serious misconduct in Indiana involving the filing of false certifications for his own personal benefit.

Burdensome and Inefficient. Deferral of these interrogatories is also compelled by their over-breadth. Taken together, the interrogatories require Defendants to detail every conversation, internal and external, concerning every fact broadly relating to the subject matter of the case. Each request, in fact, begins with an open-ended prelude like "all facts" or "all communications" -- words evidencing a scope discredited in this context by federal courts. See Steil v. Humana Kansas City, Inc., 197 F.R.D. 445, 446 (D. Kan. 2000)("The scope of the interrogatories seeking 'every fact and document,' ... is overly broad and unduly burdensome"). Even if Plaintiffs' interrogatories were deemed timely, they would have to be narrowed.

---

[11] As of the date of this brief, documents have been exchanged and depositions scheduled (but not taken). On receipt of Plaintiffs' documents, Defendants provided their first supplemental response to Plaintiffs' interrogatories, based in part on information provided.

Not only is this exercise burdensome, it is also unlikely to yield relevant information. This is not a case about "communications"; it is a breach of contract case.[12] To the extent that there are factual issues, Defendants' refusal to respond to these interrogatories at this time will not prejudice Plaintiffs in pretrial discovery, since the facts at issue are, with few exceptions, in Plaintiffs' (or third parties') exclusive control.

<u>Attorneys' Fees and Costs</u>. Plaintiffs are not entitled to sanctions under Fed.R.Civ.P. 37(a)(4), even if the Court orders Defendants to provide additional information at this time. Sanctions are not warranted where "the opposing party's nondisclosure, response or objection was substantially justified." Fed.R.Civ.P. 37(a)(4)(A). "Substantially justified" means only that the "dispute about the matter was 'genuine,' meaning that reasonable lawyers could disagree about the appropriateness of the disputed position." Moore §37.23[2] (citing Fed.R.Civ.P. 37(a)(4) advisory committee's note (1970)). Defendants' central objection to Plaintiffs' interrogatories is that they are premature, both because Defendants are entitled to conduct discovery before laying bare the basis for their contentions and because most of these issues will be revealed through depositions, which are scheduled. As a matter of law, given the ample authority supporting the view that contention interrogatories should be deferred until the close of discovery, it cannot be disputed that Defendants have acted with "substantial justification" here.

---

[12] Several of the interrogatories appear designed to show that Defendants' decision to terminate was pretextual for a general desire to exit the tax lien business. That subjective line of inquiry has no place -- either ABIG had an objective right to terminate under the contract, or not; the business rationale is of no consequence.

7

{N0013803;1}

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion to Compel Answers to Interrogatories and Request for Expenses.

Dated: New York, New York
      October 21, 2003

Michael A. Brown, Esquire (07483)
Michael E. Blumenfeld, Esquire (025062)
Brown, Diffenderffer & Kearney, LLP
19 East Fayette Street, Suite 401
Baltimore, Maryland 21202
(410) 296-8500

SULLIVAN & WORCESTER LLP
Michael T. Sullivan, Esquire.
Andrew T. Solomon, Esquire.
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660-3000
(212) 660-3001

By: _____
    Andrew T. Solomon

Attorneys for Fortis, Inc, American Bankers Insurance Company, Inc., and American Security Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing memorandum of law, with the supporting Declaration of Andrew T. Solomon, has been furnished via electronic mail and U.S. Mail to William J. Murphy, Murphy & Shaffer, Suite 1400, 36 South Charles Street, Baltimore, MD, 21201-3109, this 21st day of October 2003.

_____
Andrew T. Solomon

8

{N0013803; 1}